UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN G. RAYMOND, INDIVIDUALLY AND D/B/A DISCIPLES CROSS, LLC | CIVIL ACTION |
| VERSUS | NO: 09-5507 |
| CHARLES AND KIMBERLY BLAIR, D/B/A AUTHORIZED-DC-NAILBENDERS, ET AL. | SECTION: "S" (1) |

### ORDER AND REASONS

The court, having considered Defendants' Motions for Attorneys' Fees and Costs (Docs. #123, 125), the record, the applicable law, the United States Magistrate Judge's Report and Recommendation (Doc. #196), and the objections to the Magistrate Judge's Report and Recommendation made by defendants and plaintiffs' former counsel Scott Jones, hereby approves the United States Magistrate Judge's Report and Recommendation and adopts it as its opinion in this matter.

**IT IS ORDERED** that Defendants' Motions for Attorneys' Fees and Costs (Docs. #123, 125) are **GRANTED**, and they are awarded $69,982.50 in attorneys' fees and $1,588.56 in costs, plus interest, against plaintiffs and their former attorney, Scott Jones, with Jones being required to personally satisfy $64,182.89 of the award, plus interest. The balance of the award, plus interest, is to be paid by plaintiffs, John G. Raymond, individually and d/b/a Disciples Cross, LLC.

**IT IS FURTHER ORDERED** that the entire record of this matter be unsealed.

**BACKGROUND**

This matter comes before the court on objections to the United States Magistrate Judge's Report and Recommendations regarding attorneys' fees and costs (Doc. #196). On January 10, 2012, the Magistrate Judge recommended that the court award the prevailing defendants, Lora Boozell, Charles Blair, Kimbre Blair, Don Johnson, Sharon Maness, Melodie Serflaten, Dawn Hartwig, Eric Evans, Eric Louk, and Melissa Wittington, $69,982.50 in attorneys' fees and $1,588.56 in costs. The Magistrate Judge recommended that plaintiffs' former counsel, Scott Jones, pay $64,182.89, of the attorneys' fees and costs, and that plaintiffs, John G. Raymond and his company, Disciples Cross, LLC ("Disciples Cross"), satisfy the remainder. Jones and the prevailing defendants filed objections to the Report and Recommendations.

Plaintiffs hold a patent and copyright on a jewelry design known as the disciples' cross, a cross constructed from bent nails and wire. Plaintiffs market and sell the crosses through the website www.disciplescross.com.

Additionally, plaintiffs' website offers individuals the opportunity to operate their own home-based businesses making disciples' crosses. To start the business, an individual purchases a starter kit that contains a limited supply of nails and wire and an instructional video on how to make the crosses. After the individual executes a Producer's Agreement and submits a certain number of crosses that meet Disciples Cross' quality assurance standards, he or she becomes a "producer." A disciples' cross producer may sell his or her crosses back to Disciples Cross for a small profit on those crosses that pass the quality assurance test, or sell the crosses to others at whatever market

price he or she can obtain, as long as he or she buys the materials from Disciples Cross and affixes the Disciples Cross name tag to the crosses.

In July 2004, Charles Blair, purchased a starter kit from Disciples Cross and became a producer. On July 13, 2004, he executed a Producer's Agreement. Charles Blair purchased materials from Disciples Cross until October 31, 2005. Additionally, he sold completed crosses back to Disciples Cross in 2004. After becoming a producer, Charles Blair began operating the website www.authorized-dc-nailbenders.com, on which he sells completed crosses and the supplies to make disciples' crosses. Kimbre Blair is not a disciples cross producer and does not have an ownership interest in the website, but she does help her husband run his business.

In the summer of 2004, Hartwig, obtained a starter kit from Disciples Cross. She did not sign and return the Producer's Agreement. In September 2004, she began making crosses and sold them at craft fairs and church events in Minnesota. She did not sell back any to Disciples Cross. Hartwig purchased materials for the crosses from Charles Blair through his website.

In 2004, Boozell purchased a starter kit from Disciples Cross and signed a Producer's Agreement. She made crosses, sent them back to Disciples Cross for approval, sold some back to Disciples Cross, and sold some on her own.

On August 12, 2009, plaintiffs filed this suit against the Blairs, Hartwig, Boozell, and others, alleging that they "have sought to defraud and cheat Disciples Cross by producing crosses of their own after they have learned the patented method of making the crosses from Disciples Cross and marketing said crosses under different names" and/or by supplanting "Disciples Cross as the suppliers of materials for the crosses." Plaintiffs alleged that defendants communicated with each

other via the Yahoo! chatboard identified as DCProducers@yahoo.com, and conspired to violate plaintiffs' patent and copyright. Plaintiffs asserted claims against defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961-68, and alleged that defendants are liable for defamation for advising "countless individuals on how to cheat Disciples Cross, LLC by purchasing materials elsewhere."

On August 14, 2009, the Clerk of Court issued the RICO Standing Order, requiring plaintiffs to file a RICO case statement within 20 days of the date of the order.[1] Plaintiffs never filed a RICO case statement.

On January 4, 2010, and February 24, 2010, the Blairs and Hartwig, respectively, filed motions to dismiss arguing that the court lacked personal jurisdiction over them, and that plaintiffs' patent was invalid. After plaintiffs attempted to convert the motions to dismiss into motions for summary judgment, the Blairs and Hartwig withdrew their motions as to the patent's validity and proceeded with their motions to dismiss based on a lack of personal jurisdiction. On May 17, 2010, the court granted their motions to dismiss finding that they were not subject to personal jurisdiction in Louisiana. Thereafter, plaintiffs filed a motion to reconsider, which the court denied finding that plaintiffs were rehashing the arguments they made in opposition to the motions to dismiss.

---

[1] By standing order of this court dated June 3, 1987, a plaintiff who files a complaint containing RICO claims must file a RICO case statement within 20 days of the entry of the RICO Standing Order in the case. In the RICO case statement, the plaintiff must include the facts upon which he relied in initiating the RICO complaint as the result of the "reasonable inquiry" that is required by Rule 11. Further, the plaintiff must provide specific details, in a specific form, regarding defendants' alleged conduct, the pattern of racketeering activity, a description of the enterprise, and other items that are required to state a RICO claim. The Untied States Court of Appeals for the Fifth Circuit has stated that the RICO case statement "is a useful, sometimes indispensable, means to understand the nature of the claims asserted and how the allegations satisfy the RICO statute." Marriott Bros. v. Gage, 911 F.2d 1105, 1107 (5th Cir. 1990).

On August 18, 2010, Boozell moved to dismiss the complaint arguing that: (1) plaintiffs failed to state claims upon which relief could be granted; (2) plaintiffs ignored the RICO Standing Order; (3) plaintiffs' claims were time barred; and (4) the patent was invalid. On October 8, 2010, the court granted Boozell's motion as to all of plaintiffs' claims except the copyright infringement claim. Specifically, the court found that: (1) the patent was invalid because the crosses had been for sale for more than a year before the patent application, as admitted by plaintiffs' on their website; (2) plaintiffs failed to file a RICO case statement; (3) plaintiffs did not plead fraud with particularity; (4) the contracts demonstrated that the parties anticipated that defendants would purchase the materials from sources other than plaintiffs; and (6) plaintiffs did not properly allege a claim for defamation against Boozell.

On October 20, 2010, Boozell's counsel sent a letter to plaintiffs' counsel pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure demanding that he voluntarily dismiss with prejudice all of the remaining claims against the remaining defendants within 21 days. On December 1, 2010, a stipulation and consent of voluntary dismissal of all remaining claims was entered, and all claims were dismissed with prejudice.

On January 4, 2011, Boozell filed a motion for attorneys' fees and cost (Doc. #123). The other defendants filed a similar motion on January 6, 2011 (Doc. #125). On March 25, 2011, Jones moved to withdraw as plaintiffs' counsel, and moved to stay the proceedings while plaintiffs sought other counsel. The motions for attorneys' fees and costs and the motion to stay were referred to the Magistrate Judge. Jones' motion was denied.

On January 10, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommends that the District Judge award defendants $69,982.50 in attorneys' fees and $1,588.56 in costs, with Jones personally satisfying $64,182.89 of the award. The Magistrate Judge found that plaintiffs and Jones knew or should have known that the patent upon which this litigation was based was invalid, rendering the patent infringement claim and the derivative claims frivolous. Then, she applied the lodestar method to calculate the reasonable attorneys' fees and costs. She reduced the fees requested to arrive at the recommended amount.

Jones argues that defendants are not entitled to attorneys' fees because the litigation was not vexatious. He argues that he relied on the presumed validity of an issued patent in filing and pursuing the case. He contends that he did not have an affirmative duty to research his client or the claims made in connection with the patent. Jones also argues that Raymond told him that the public statements on the website regarding the sale of the crosses in the early 1990's were untrue, but he was doubtful of this "admission" and did not include it in his pleadings. Alternatively, he argues that defendants' award of attorneys' fees and costs should be limited to those fees and costs that directly relate to the patent issue, which he contends are $9,402.50 in attorneys' fees and "a fraction of the $1,205.74" in Westlaw charges.

Defendants accept the Magistrate Judge's calculation of the attorneys' fees and costs. They objected to the Report and Recommendation, seeking interest on the award and asking that the entire record in this matter be unsealed. Portions of the record regarding Raymond's alleged admission that the statements on his website regarding the date on which he began selling the crosses were

6

false were sealed to protect plaintiffs. Defendants argue that the seal interferes with the public's right to knowledge of the court record, and aids Raymond in perpetuating a fraud on the public.

Defendants argue that the plaintiffs have waived their right to object to the Report and Recommendations by failing to file timely objections. They also argue that Jones' objections should be overruled because there is clear and convincing evidence that plaintiffs and Jones knew or should have known that the patent was invalid rendering the litigation vexatious. In a document that plaintiffs and Jones possessed titled "U.S. Patent Assertion of Validation and Ownership," Troy Vinson, the original patent holder, stated that he began selling the crosses in 1994. Vinson filed the patent application more than one year later in 1997. Raymond relied on these statements in applying for a copyright. Further, defendants argue that Vinson's statements demonstrate that he perpetrated a fraud on the patent office by failing to disclose that he had been selling the crosses for three years prior to filing the patent application.[2] Defendants argue that they are entitled to attorneys' fees and costs related to defending against all of plaintiffs' claims because the claims were all based on an invalid patent.

---

[2] Pursuant to 35 U.S.C. § 102(b), a person is not entitled to a patent for an invention if it was in public use or on sale in the United States for more than one year prior to the date of the patent application. Also, Attorneys' fees may be awarded under 35 U.S.C. § 285 if the patent involved in the litigation was secured by inequitable conduct or fraud.

## ANALYSIS

**1.      Awarding Attorneys Fees' and Costs**

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonably attorney fees to the prevailing party." In Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366-67 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit explained that:

> The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that the case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified . . .

An exceptional case is one in which "there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct the violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). If there is no misconduct during the patent prosecution or the litigation, sanctions may be imposed against a patent plaintiff "only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011) (quoting Brooks Furniture, 393 F.3d at 1381). To recover attorneys' fees the defendant must prove by clear and convincing evidence that the plaintiff's case had no objective foundation, and the plaintiff actually knew it. Id. (citing Wedgetail Ltd. v. Huddleston Delux, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009)). There is a "presumption that the assertion of infringement of a duly granted patent is made in good faith." Brooks Furniture, 393 F.3d

at 1382 (citing Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed Cir. 2003)).

Further, 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

All of plaintiffs' claims in this litigation arise out of the patent. Raymond and Jones knew or should have known from the inception of this litigation that the patent was invalid. Raymond and Vinson both made public statements that demonstrate that the crosses were in commerce for more than a year prior to Vinson's patent application. Also, Vinson stated in an affidavit that he used the crosses in commerce three years prior to applying for a patent, and Raymond used that affidavit to secure copyright protection. Jones was in possession of these documents that clearly demonstrated the patent's invalidity. Further, once the Blair defendants raised the validity of the patent in their motion to dismiss, Raymond and Jones were on notice that there were issues regarding patent's validity and should have more closely scrutinized all of their claims before continuing the litigation against all defendants. Although he was on notice that there were issues with the patent's validity, Jones continued aggressively to pursue the case by filing multiple pleadings pertaining to claims that were predicated upon the patent's validity. Because Raymond and Jones knew or should have known that the patent was invalid, the litigation was brought and continued in bad faith, making them liable for attorneys' fees and costs pursuant to the patent act. Additionally, Jones unreasonably and vexatiously multiplied the proceedings, making him personally liable for reasonable attorneys' fees and costs incurred by defendants because of his conduct pursuant to 28 U.S.C. §1927.

9

Therefore, the court accepts the Magistrate Judge's recommendation that plaintiffs and Jones pay reasonable attorneys' fees and costs to defendants.

**2.      Lodestar Method**

Determination of the reasonableness of defendants' fee applications is a two-step process that begins with determination of the "lodestar" amount. A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. After making this calculation, the court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting. Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir.1993).

The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. Johnson, 488 F.2d at 717-19.

Of the aforesaid Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience,

reputation and ability of counsel. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir.1998). Three of the Johnson factors, complexity of the issues, results obtained and preclusion of other employment, are generally fully reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043; Shipes, 987 F.2d at 319-22 & n. 9). Additionally, since the Johnson decision issued, the Supreme Court of the United States has barred any use of the sixth factor (*i.e.,* whether the fee is fixed or contingent). Walker v. United States Dep't of Housing & Urban Dev., 99 F .3d 761, 772 (5th Cir.1996) (citing City of Burlington v. Dague, 112 S.Ct. 2638 (1992) and Shipes, 987 F.2d at 323).

The lodestar is presumptively reasonable and should be modified only in exceptional cases. Watkins v. Fordice, 7 F.3d 453, 459 (5th Cir.1993); Heidtman, 171 F.3d at 1043. Although the party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorneys' qualifications and skills, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983); Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir.1997); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir.1995).

The Magistrate Judge properly applied the loadstar method in this case. She determined the reasonable amount of time the attorneys worked, applied billing judgment, and used a reasonable hourly rate. Therefore, the court accepts the Magistrate Judge's recommendation regarding the amount of attorneys fees and costs, and awards $69,982.50 in attorneys' fees and $1,588.56 in costs to defendants from plaintiffs and their former attorney, Scott Jones, with Jones personally satisfying $64,182.89 of the award.

**3.** **Interest**

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The phrase "any money judgment" includes an award of attorneys' fees. Mathis v. Spears, 857 F.2d 749, 760 (Fed. Cir. 1988). This provision is intended to "deter[] use of the appellate process by the judgment debtor solely as a means of prolonging its free use of money owed the judgment creditor." Id. Interest on an award of attorneys' fees runs from the date of the judgment establishing the award, not the date of judgment establishing its quantum. Id. (citing Cooper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542, 544-45 (5th Cir. 1983) (*en banc*)). Therefore, defendants are entitled to interest on their award of attorneys' fees and costs running from the date of this order.

**4.** **Unsealing the Record**

Defendants contend that the entire record should be unsealed. Neither Jones nor plaintiffs objected to the request. Therefore, the record shall be unsealed.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motions for Attorneys' Fees and Costs (Docs. #123, 125) are **GRANTED**, and they are awarded $69,982.50 in attorneys' fees and $1,588.56 in costs, plus interest, against plaintiffs and their former attorney, Scott Jones, with Jones being required to personally satisfy $64,182.89 of the award, plus interest. The balance of the award, plus interest, is to be paid by plaintiffs, John G. Raymond, individually and d/b/a Disciples Cross, LLC.

**IT IS FURTHER ORDERED** that the entire record of this matter be unsealed.

New Orleans, Louisiana, this __4th__ day of April, 2012.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**